# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

**SYMON MANDAWALA,**
    *Plaintiff*,

v.                                                     No. SA-19-CV-00635-JKP

**STRUGA MANAGEMENT, et al.,**
    *Defendants*.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Symon Mandawala, initiated this action on June 7, 2019, bringing claims related to the termination of his residency at Vineyard Gardens Apartments in San Antonio, Texas. *ECF No. 1*. The case was transferred to the undersigned on September 16, 2019. *ECF No. 13*. And referred to the Honorable Henry J. Bemporad for disposition of all non-dispositive pretrial matters. *ECF No. 17*. Plaintiff twice amended his complaint, *ECF Nos. 25, 29*.

Plaintiff alleges in his Second Amended Complaint (the live pleading) he was a tenant in the apartment property Vineyard Gardens managed by Struga Management beginning in May 2016. *ECF No. 29, par. 1*. Mandawala alleges on December 17, 2017,[1] he moved into another apartment in the same property with other existing tenants, Mr. SJohn Smith and Elizabeth Smith. *Id. at pars. 1, 24, 25*. Mandawala alleges he and the Smiths "paid a joining fee of $40" to Struga Management, and its employee signed a "receipt" in purported "consent" of this arrangement. *Id*. "Three month[s] later defendant [Struga Management] claimed Plaintiff [Mandawala] was not on lease and was unauthorized to live in unit with Smith's family and demanded [Mandawala] move out or else [it] would not renew the lease for Smith family." *Id. at par. 1*. Mandawala alleges tensions escalated in

---

[1] Plaintiff has clarified and the evidence presented at trial confirmed that Mr. Mandawala moved into the Smith's apartment in 2018. *See* Plaintiff's Exhibit B-2; Defendants' Exhibits 6, 14

March 2019 when defendant employees of Struga Management began withholding his mail and packages, and then initiated eviction proceedings against the Smiths based upon their housing of an unauthorized occupant. *Id. at pars. 10-21*. Mandawala alleges he was thereby forced to move from the premises and subsequently filed this action on June 7, 2019. *Id. at par. 22*. Mandawala alleges the named defendants denied him his rights to fair housing based upon racial discrimination. *Id. at pars.28-35*.

Mandawala's second amended complaint asserted eleven causes of action: (1) racial discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. 3601-3619, 3535(d), 3600-3620 ("Counts 1-3"); (2) fraudulent practices in violation of 42 U.S.C §1981(a)(b), Texas Property Code §92.004, and the Texas Deceptive Trade Practices Act, Texas Business & Commercial Code §17.46 ("TDTPA") ("Counts 4 – 6"); (3) deprivation of rights under "color of law" in violation of the FHA, 42 U.S.C. §1981(c) and §1983 ("Count 7"); (4) intentional infliction of emotional distress ("Count 8"); (5) Conversion ("Count 9"); (6) deprivation of rights to fair housing in violation of the FHA, 42 U.S.C. §1985 ("Count 10"); and (7) Conspiracy to commit these named violations, under 42 U.S.C. §1986 ("Count 11").[2]

The parties filed dispositive motions in January and March of 2020. *ECF Nos. 38, 39, 40, 41, 45*. The Court denied Plaintiff's motion for summary judgment and granted in part and denied in part the Defendants' motions to dismiss. *ECF Nos. 53, 54, 55, 56, 57*. The Court's orders permitted Counts 1, 2, 3, 4, 6, and 9 to proceed. Mr. Mandawala appealed the Court's decisions to the Fifth Circuit, which dismissed the appeal for want of jurisdiction. *ECF Nos. 58, 68*. The parties then indicated willingness to mediate the remaining claims. However, after several status conferences, agreement to mediate could not be reached and the case was set for trial. In July 2021, the case was tried to the

---

[2] Count 11 was also asserted against attorneys David Fritsche and Travis Miller. Mr. Fritsche and Mr. Miller were never served in this action. Mr. Fritsche represents the Defendants.

Court, sitting without a jury. Pretrial matters were resolved on July 12, 2021. Trial commenced on July 13, 2021 and concluded July 14, 2021.

The Court has reviewed the record and the evidence presented at trial. The Court has made determinations as to the relevancy and materiality of the evidence, assessed the credibility of the witnesses, and ascertained for its purposes the probative value of the evidence presented. After such consideration, the Court finds the following facts have been proven by a preponderance of the evidence, and applying law to such facts, makes the following conclusions of law.

**A. PARTIES**

The Plaintiff in this case is Symon Mandawala. The Defendants are Struga Management, the company that manages Vineyard Gardens; Consuelo Corona, property manager at Vineyard Gardens; Juan Martinez, maintenance worker at Vineyard Gardens; and Raven Rocco, supervisor at Vineyard Gardens.

**B. APPLICABLE LAW**

1. The plaintiff bears the ultimate burden of proving his case by a preponderance of the evidence. *James v. Dall. Hous. Auth.*, 526 F. App'x 388, 393 (5th Cir. 2013) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) (observing the preponderance of the evidence standard is the "default rule for civil cases").

2. Conversion is "'[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights...'" *Ojeda v. Wal–Mart Stores, Inc.,* 956 S.W.2d 704, 707 (Tex. App.—San Antonio 1997, pet. denied).

3. The Fair Housing Act makes it unlawful to "make unavailable, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

4. Section 1981 provides in relevant part that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The term "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

5. Texas Business and Commercial Code § 17.46 prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. Tex. Bus. and Comm. Code § 17.46.

## C. FINDINGS OF FACT AND CONCLUSIONS OF LAW

**1. Conversion**

Conversion is "'[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights...'" *Ojeda v. Wal–Mart Stores, Inc.,* 956 S.W.2d 704, 707 (Tex. App.—San Antonio 1997, pet. denied). To prevail on a cause of action for conversion, a plaintiff must establish: (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of an inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property. *Tow v. Amegy Bank N.A.*, 976 F. Supp. 2d 889, 907 (S.D. Tex. 2013); *Allan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 888 (Tex. App.—Dallas 2009, no pet.).

Consuelo Corona testified that in March 2019, when a package did not fit in a Vineyard Gardens tenant's mailbox, the mail carrier would leave the package at the management office and place a notice in the tenant's mailbox. She testified that not every employee was authorized to release packages to recipients. Mrs. Corona testified that on March 18, 2019, Mr. Mandawala appeared at the

Vineyard Gardens office asking for packages that the mail carrier had left for him. Juan Martinez was present in the office but he was not authorized to release the packages. No employee authorized to release packages was present at Vineyard Gardens at the time but Plaintiff was told that an authorized employee would return to give him his packages. Mrs. Corona also testified that in March 2019, packages that were delivered to the Vineyard Gardens office were taken to a sister property down the street. She testified that packages were taken to the sister property because the Vineyard Gardens office was temporarily closed due to an employee being on maternity leave. She testified that when Mr. Mandawala was told they would bring the packages to the office, he stated he did not have time to wait. Therefore, when the authorized employee returned, the packages were left outside the door of the apartment in which Mr. Mandawala resided. Defendants tendered photographic evidence of packages outside of Apartment 308. Raven Rocco testified that she and Juan Martinez left packages addressed to Mr. Mandawala at the door of Apartment 308.

Plaintiff testified that when he went to the office at Vineyard Gardens and requested his packages, he was told to go to 5050 Fredericksburg to collect the packages. Plaintiff testified that he refused to go to 5050 Fredericksburg to collect his packages but called the police to report his missing packages. Plaintiff also testified that he never received his packages.

Plaintiff failed to establish that any Defendant assumed and exercised dominion and control over Plaintiff's packages in an unlawful and unauthorized manner. The evidence showed that the mail carrier placed notices in the mailbox for Apartment 308 and left packages at the Vineyard Gardens office. Defendants testified that because the Vineyards Gardens office was closed, all packages left for Vineyard residents were taken to the Struga-managed property at 5050 Fredericksburg, where Vineyard residents could collect them. Plaintiff also failed to establish that Defendants refused to give him the packages when he asked for them. Raven Rocco, Juan Martinez, and Consuelo Corona each

testified that Ms. Rocco arrived at the Vineyard Gardens office with Plaintiff's packages several minutes after Plaintiff requested his packages but Plaintiff had refused to wait so she and Mr. Martinez left the packages at the door of Apartment 308, which was the address written on the packages and where Plaintiff was residing. Defendants further testified and presented evidence that they delivered a total of five packages on two separate occasions addressed to Mr. Mandawala in Apartment 308. And that on at least one occasion, they knocked on the door and heard footsteps inside the apartment, although no one answered the door. Therefore, the Court concludes that Plaintiff failed to establish by a preponderance of the evidence the necessary elements of a conversion claim.

**2. Fair Housing Act and 42 U.S.C. § 1981**

The Fair Housing Act makes it unlawful to "make unavailable, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Section 1981 provides in relevant part that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).

Claims under the Fair Housing Act (FHA) and 42 U.S.C. 1981 are analyzed under the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. If plaintiff establishes a prima facie case, the defendant is given the opportunity to articulate a legitimate, non-discriminatory reason for its conduct. The burden then shifts back to the plaintiff to rebut the reason offered by showing it is a pretext for discrimination. Under the Fair Housing Act, "there can be no liability without a finding that the protected trait (*e.g.*, race) motivated the challenged action." *Crain v. City of Selma*, 952 F.3d 634, 640 (5th Cir. 2020). Under § 1981, a plaintiff must initially plead and ultimately prove that, but for his protected status, he would not have

suffered the loss of a legally protected right. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009 (2020).

"To make out a prima facie claim of disparate treatment under the FHA, a plaintiff must establish (1) membership in a protected class, (2) that he applied and was qualified to rent or purchase housing, (3) that he was rejected, and (4) that the housing thereafter remained open to similarly situated applicants." *Crain*, 952 F.3d at 640 (quoting *Inclusive Comms. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 910 (5th Cir. 2019)). To ultimately prevail, the plaintiff must establish that the defendants' proffered rationale is pretextual. *Artisan/Am. Corp. v. City of Alvin*, 588 F.3d 291, 295 (5th Cir. 2009). Under the FHA, plaintiff need not show that racial animus was "sole motivation" for the adverse action but he must show his protected class was "a significant factor in the decision." *Woods-Drake v. Lundy*, 667 F.2d 1198, 1202 (5th Cir. 1982).

Under § 1981 and § 1982, "a *prima facie* case of discrimination requires a plaintiff to establish (1) that [he] is a member of a racial minority, (2) that the defendant had intent to discriminate on the basis of race, and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Chester v. Arena*, 694 F. App'x 322, 323 (5th Cir. 2017) (citing *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011). Once plaintiff makes a prima facie case, the defendant must provide a nondiscriminatory reason for its conduct. If the defendant makes this showing, plaintiff must establish that the defendant's nondiscriminatory explanation is pretextual. "42 U.S.C. § 1981 requires plaintiff's showing but-for causation." *Williams v. Waste Mgmt.*, 818 F. App'x 315, 325 (5th Cir. 2020) (applying but-for standard in employment case).

Plaintiff testified that Defendants' proffered reason for filing eviction proceedings against all occupants of Apartment 308 is false. He testified that Raven Rocco accepted his application to become a co-tenant in Apartment 308, told him he did not need any supporting documents because

7

they already had them in his file, and never told him that his application was denied. It is undisputed that Plaintiff was a resident of Vineyard Gardens from October 1, 2016 until March 25, 2019, that he timely paid his rent, and that prior to March 18, 2019, he had no negative encounters or incidents with Struga employees or other residents of Vineyard Gardens. Plaintiff testified that when Defendants decided they no longer wanted him as a tenant, instead of simply asking him to leave, they maligned his character by publicly accusing him of committing crimes. Plaintiff testified that he and the Smiths, residents of Apartment 308, and Ms. Elsie Mooney, resident of Apartment 311 (who also timely paid her rent), were harassed by Struga and its employees and evicted because they are Black.

With respect to establishing a prima facie case of discrimination, Plaintiff asked no questions that elicited testimony demonstrating that any Defendant had the intent to discriminate on the basis of race; nor did he present documentary evidence of such intent. Plaintiff also did not establish that he was qualified to become a co-tenant or resident of Apartment 308. Accordingly, Plaintiff did not demonstrate each of the elements required to make a prima facie case of discrimination under either the Fair Housing Act or § 1981.

Assuming Plaintiff could make a prima facie case of discrimination, Defendants provided a nondiscriminatory reason for its conduct, to wit: Plaintiff did not complete the application requirements to become a co-tenant in or resident of Apartment 308. Mrs. Corona and Ms. Rocco testified that at the time Plaintiff applied to be a co-tenant, the policy of Struga Management was that every co-tenant applicant must show verifiable proof of income and a valid ID. Mrs. Mushania Scott, a former Struga employee, testified that a new co-tenant did not need to show proof of income because the existing tenant had already established income. Plaintiff testified that Ms. Rocco told him he did not need to provide any documents beyond the application because they already had the needed supporting documentation in his file. The documentary evidence demonstrated that every applicant—

each co-resident and each occupant over eighteen—must provide verifiable proof of income. Def. Ex. 14, 15. This evidence also showed that Plaintiff signed his acknowledgement of the rental-selection criteria. Def. Ex. 14 at 2. The Court finds that the testimony and documentary evidence supports the proffered nondiscriminatory reason for Defendants' conduct. Because Defendants made this showing, to prevail, Plaintiff must establish that the Defendants' nondiscriminatory reason is pretextual.

Plaintiff asked no questions that elicited testimonial evidence that his protected class was a significant factor in Struga Management's purported denial of his application to join or be a co-tenant in Apartment 308. Plaintiff elicited no testimony to show that his protected class was a significant factor in any request or demand that Plaintiff vacate Apartment 308 of Vineyard Gardens. Additionally, the Court's review of Plaintiff and Defendants' exhibits did not uncover evidence that Plaintiff's protected class was a significant factor or but for cause of any decision to deny Plaintiff's application to reside in Apartment 308 or any request or demand that Plaintiff vacate the premises. Accordingly, Plaintiff failed to prove pretext.

### 3. Texas Deceptive Trade Practices Act (DTPA)

To prevail on a cause of action brought under Texas Business and Commercial Code § 17.46, a plaintiff must prove the defendant engaged in a false, misleading, or deceptive act or practice that the plaintiff relied on to his detriment and that was a producing cause of damages to plaintiff.

Plaintiff elicited no testimony and presented no documentary evidence that Defendant engaged in any false, misleading, or deceptive act or practice. Accordingly, Plaintiff has failed to prove this claim by a preponderance of the evidence.

**D. CONCLUSION**

In accordance with these findings of fact and conclusions of law, Plaintiff takes nothing on his claims. A separate judgment will be entered contemporaneously herewith. Defendants may file a properly supported motion for attorney fees and costs on or before August 20, 2021.

**It is so ORDERED this 15th day of July 2021.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**